IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IBC Advanced Technologies, Inc., and Steven R. Izatt,<br><br>Plaintiffs,<br><br>v.<br><br>Ucore Rare Metals Inc., Jim McKenzie, and Peter Manuel,<br><br>Defendants. | **SEALED MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**<br><br>Case No. 2:19-cv-00222-HCN<br><br>United States District Court Judge Howard C. Nielson, Jr. |

Plaintiff IBC Advanced Technologies, Inc. ("IBC") and Defendant Ucore Rare Metals Inc. ("Ucore") are currently litigating similar claims in two different venues—in this court and in the Supreme Court of Nova Scotia, Canada. Although it does not dispute that this case falls within the court's subject matter jurisdiction, Ucore argues that this court should abstain from exercising that jurisdiction as a matter of comity to the Canadian court. Relying on the *Colorado River* abstention doctrine, as extended by many lower courts to apply in the international context, Ucore moves to dismiss or, in the alternative, to stay proceedings in this court. Dkt. No. 8; Dkt. No. 9 (Sealed). Because the dual litigation at issue here does not present the sort of exceptional circumstances that would justify application of *Colorado River*, the court denies Ucore's motion.

**I.**

Ucore and IBC are parties to several agreements and now find themselves, along with IBC's President and CEO Mr. Steven R. Izatt, litigating claims relating to these agreements both here and in Canada. Ucore filed the first of these lawsuits against Plaintiffs in the Supreme Court of Nova Scotia on December 11, 2018. *See* Dkt. No. 8-1. In its initial complaint, Ucore alleged libel, injurious falsehood, and unlawful interference with economic relations—all of which stemmed from a press release issued by IBC. *See* Dkt. No. 8-1.

1

On February 19, 2019, Plaintiffs filed this lawsuit in Utah state court, alleging that Ucore and two of its officers—Mr. Jim McKenzie, Ucore's President and CEO, and Mr. Peter Manuel, Ucore's Vice President and CFO—breached various agreements between the parties and engaged in related tortious conduct. *See* Dkt. No. 4 (Sealed). Plaintiffs' claims include breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraudulent concealment or fraudulent nondisclosure, breach of fiduciary duty, unjust enrichment, and fraudulent inducement. *See* Dkt. No. 4 (Sealed) at 26–36. Ucore filed a notice of removal on April 3, 2019. *See* Dkt. No. 2. Plaintiffs have not yet served the individual defendants, Mr. McKenzie and Mr. Manuel. *See* Dkt. No. 29 at 5.

Ucore also amended its Canadian complaint the day before it removed the Utah case to this court. *See* Dkt. No. 8-2. Included in Ucore's amended complaint is a request to declare valid and enforceable one of its agreements with IBC—the "Option Agreement." *See* Dkt. No. 8-2 ¶ 2. Ucore also seeks from the Canadian Court a declaration that "IBC breached the Option Agreement and its duty of good faith performance." Dkt. No. 8-2 ¶ 4. In light of these additional contract claims, Ucore contends that Plaintiffs' "numerous claims" that IBC "was defrauded into entering the Option Agreement"—which Ucore asserts form the gravamen of Plaintiffs' lawsuit in the District of Utah—"will be fully litigated in the Canadian proceedings as either a defense or counterclaim." Dkt. No. 8 at 5; *see also* Dkt. No. 29 at 1 ("The suits include the same parties, controversy, and basic claims and there is nothing barring Plaintiffs from asserting the claims they raise here as counterclaims in Canada."). For now, however, Plaintiffs have "not brought any claims in the Canadian action and remain[] purely [] defendant[s] there." Dkt. No. 18 at 4–5.

On April 10, 2019, Ucore filed a motion to dismiss or, in the alternative, to stay. *See* Dkt. No. 8; Dkt. No. 9 (Sealed). Ucore argues that such relief is warranted under international abstention principles developed in other circuits and followed by the District of Colorado. *See*

2

Dkt. No. 29 at 3–4. Among other things, Ucore stresses that "[t]his case presents the sort of extraordinary circumstances that require abstention because Ucore would be substantially prejudiced by having to litigate in Utah, where its primary witnesses [*i.e.*, the individual defendants, Mr. McKenzie and Mr. Manuel] cannot travel without submitting to personal jurisdiction here." Dkt. No. 29 at 5.

## II.

The Supreme Court has repeatedly emphasized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *accord Mata v. Lynch*, 135 S. Ct. 2150, 2156 (2015); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813 (citation omitted).

In *Colorado River*, the Supreme Court recognized that a federal court faced with parallel state proceedings may in "exceptional" circumstances abstain "for reasons of wise judicial administration." *Id.* at 818. Although neither the Supreme Court nor the Tenth Circuit has applied the *Colorado River* abstention doctrine in a case involving parallel proceedings in a foreign court, *see National Union Fire Ins. Co of Pittsburgh, PA v. Kozeny*, 115 F. Supp. 2d 1243, 1247 (D. Colo. 2000), other circuits have extended this doctrine to such cases. *See Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 93–94 (2nd Cir. 2006) (collecting cases).

To determine whether parallel judicial proceedings present exceptional circumstances warranting abstention under *Colorado River*, a court must weigh several factors, including (1) "whether either court has assumed jurisdiction over property," (2) "the inconvenience of the

3

federal forum," (3) "the desirability of avoiding piecemeal litigation," (4) "the order in which the courts obtained jurisdiction," (5) "the vexatious or reactive nature of either the federal or the state action," (6) "whether federal law provides the rule of decision," and (7) "the adequacy of the state court action to protect the federal plaintiff's rights," *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (citing *Colorado River*, 424 U.S. at 818, and *Moses H. Cone*, 460 U.S. at 18 nn.20, 23, 28 (1983)); *see also Fox*, 16 F.3d at 1082 (noting that "[o]ther courts also have considered whether the party opposing abstention has engaged in impermissible forum-shopping"). The court's determination, however, "does not rest on a mechanical checklist, but a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. As the D.C. Circuit has explained, because "only truly exceptional circumstances will allow a federal to stay or dismiss a federal action in favor of a concurrent action before state court . . . , it is not enough that the factors favoring deferral outnumber those opposed (or neutral). Rather, the factors favoring deferral must themselves be exceptional." *Edge Investment, LLC v. District of Columbia*, 927 F.3d 549, 554 (D.C. Cir. 2019) (citation and internal quotation marks omitted).

In extending the *Colorado River* doctrine to the international context, courts have modified or reformulated some of these factors. *See, e.g., Royal and Sun Alliance*, 466 F.3d at 94. The parties agree that the court should decide this case using modified *Colorado River* factors as articulated by the District of Colorado in *National Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*: (1) "similarity of parties and issues involved in foreign litigation"; (2) "the promotion of judicial efficiency"; (3) "adequacy of relief available in the alternative forum"; (4) "issues of fairness to and convenience of the parties, counsel, and witnesses"; (5) "the possibility of prejudice to any of the parties"; and (6) "the temporal sequence of the filing of the actions." 115 F. Supp. 2d 1243, 1247 (D. Colo. 2000). The court will do so given that these factors are

similar to those articulated by other courts applying the *Colorado River* doctrine in the international context, *see, e.g., Royal and Sun Alliance*, 466 F.3d at 94, and because application of this doctrine does not turn "on a mechanical checklist" in all events, *Moses H. Cone*, 460 U.S. at 16.[1]

The Supreme Court has made clear that courts engaging in a *Colorado River* analysis should not set out to "find some substantial reason for the *exercise* of federal jurisdiction" but should instead "ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25–26. Thus, as the Tenth Circuit has explained, "any doubt should be resolved in favor of exercising federal jurisdiction." *Fox*, 16 F.3d at 1082. The court finds these admonitions fully applicable in the international context presented here.

## III.

---

[1] The *Colorado River* doctrine also requires a threshold determination that the proceedings are "parallel." *Fox*, 16 F.3d at 1081; *see also Moses H. Cone*, 460 U.S. at 16. This is true in the international context as well. As the Seventh Circuit has explained, "[i]n evaluating the propriety of [abstention] under *Colorado River*," a court "must first determine whether the federal and foreign proceedings are parallel." *AAR Intern., Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001). Under Tenth Circuit precedent, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox*, 16 F.3d at 1081 (citation omitted). To determine whether suits are parallel, a court must "examine the state [or international] proceedings as they actually exist"—not as they "could have been brought in theory." *Id.* (citation omitted). Suits need not be identical to be parallel, *D.A. Osguthorpe Family v. ASC Utah*, 705 F.3d 1223, 1233 (10th Cir. 2013), but "any doubt" on this score should be resolved "in favor of exercising federal jurisdiction." *Allen v. Board of Educ.*, 68 F.3d 401, 403 (10th Cir. 1995) (citation and internal quotation marks omitted). Although the question of whether the proceedings here and in Canada are parallel appears to present a close call (though perhaps less close if IBC's recent motion to amend its complaint to add claims alleging trademark infringement and defamation is granted, *see* Dkt. No. 43; Dkt. No. 43-1), the court need not decide this issue. For, as explained below, the court finds that even if the proceedings are parallel, the circumstances here are not so "extraordinary" as to justify abstention.

In this case, the court finds neither sufficiently "exceptional" circumstances nor the "clearest of justifications" that would warrant the "surrender" of this court's jurisdiction to resolve a case properly before it. To be sure, the first, second, and third *Kozeny* factors do appear to weigh in favor of Ucore. First, both cases involve Plaintiffs and Ucore and require the courts to interpret and consider the validity of the same agreements. Second, it would undoubtedly save this court time and resources if it waited until the proceedings in Canada ran their course before addressing any claims left undecided. Third, "[t]here is little dispute that Canada would be an adequate alternate forum for this litigation." *Deston Songs LLC v. Wingspan Records*, 2001 U.S. Dist. LEXIS 9763 (S.D.N.Y. July 12, 2001).

The court finds that the fourth factor—convenience—does not strongly weigh in favor of either party. On the one hand, "all of IBC's records are kept in Utah," "the majority of witnesses necessary to either side of the case resides in Utah," and "the evidence supporting IBC's trade secrets claim, such as efforts taken to protect its trade secrets, is located in Utah." Dkt. No. 18 at 24–25. On the other hand, "Nova Scotia is more convenient . . . [for] many of the witnesses," including Ucore's "primary witnesses," and dual proceedings in Nova Scotia and Utah may well require evidence and witnesses to shuttle between the two venues. Dkt. No. 29 at 9–10. The sixth factor—timing—is also neutral. Although Ucore did file first, its lawsuit at that point was based on allegedly false statements made by IBC—statements not at issue here—rather than a contract claim. *See* Dkt. No. 8-1 ¶ 18 ("The issue in this proceeding is narrow and arises out of a false press release issued by IBC on November 26, 2018."). Instead, IBC was the first to file contract claims.

Finally, the court finds that the prejudice factor does not strongly favor either party. This factor seems to be the crux of Ucore's argument that the circumstances here are extraordinary. *See* Dkt. No. 29 at 5 ("This case presents the sort of extraordinary circumstances that require

abstention because Ucore would be substantially prejudiced by having to litigate in Utah, where its primary witnesses cannot travel without submitting to personal jurisdiction here."). But the court finds that any strategic choice Ucore must make with respect to the individual defendants does not present as extraordinary a dilemma as Ucore maintains. This finding does not turn on whether Ucore is correct that this court will not have jurisdiction over the individual defendants unless they travel to Utah to testify. First, the asserted "prejudice" is a natural outcome of a lawsuit filed against Ucore in the United States. If the Canadian suit had not been filed, or if that suit had never been amended, Ucore would face this exact same "dilemma." Nor is this sort of "dilemma" particularly unusual—to the contrary, it can arise any time a foreign defendant is sued in the United States and wishes to present witnesses who are also potential defendants. Second, if, as Ucore insists, "there is nothing barring Plaintiffs from asserting the claims they raise here as counterclaims in Canada," Dkt. No. 29 at 1, then the individual defendants are already subject to suit in Canada, regardless of whether litigation proceeds in this court. What is truly at issue, then, is not whether the individual defendants can be sued at all, but only which venue is more convenient for them. Finally, at the hearing on this motion, Plaintiffs' counsel represented that Plaintiffs will not seek to serve the individual defendants while they are in Utah to testify or otherwise participate in this litigation and will not rely on these individuals' presence in Utah for these purposes to support Plaintiffs' argument that the court has personal jurisdiction over them. *See* Oral Argument 34:30–35:30. These representations appear to eliminate Ucore's principal objection to litigating in this court.

In the end, while some of the *Kozeny* factors do weigh in favor of abstention, neither any of these factors individually nor all of them taken together present the sort of "extraordinary" circumstances that would justify abstention. *See Edge Investment*, 927 F.3d at 554 ("[I]t is not enough that the factors favoring deferral outnumber those opposed (or neutral). Rather, the

factors favoring deferral must themselves be exceptional."). At most, dual proceedings in Nova Scotia and this court pose a risk of duplicative effort and inconsistent outcomes. The circumstances here thus present little more than a "garden-variety example of two lawsuits proceeding concurrently in two courts." *Id.* at 556. If that were enough to support abstention, then such circumstances "would seemingly support abstention in every federal case that has a parallel state [or here, foreign] case." *Id.* (citation omitted). But even in the international context, the *Colorado River* doctrine must be "confined to its banks." *Id.* at 550. Absent circumstances more extraordinary and justifications much clearer than those presented here, this court will not depart from its "virtually unflagging obligation" to exercise the jurisdiction that the Constitution and Congress have given it.

For the foregoing reasons, the court **DENIES** Ucore's motion to dismiss or, in the alternative, to stay. **IT IS SO ORDERED.**

DATED this 25th day of October, 2019.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

United States District Court
for the
District of Utah
October 25, 2019

******MAILING CERTIFICATE OF THE CLERK******

RE:   IBC Advanced Technologies et al v. Ucore Rare Metals et al
      2:19-cv-00222-HCN-DBP

**Andrew G. Deiss**
DEISS LAW PC
10 W 100 S STE 425
SALT LAKE CITY, UT 84101

**Christopher J. Martinez**
DORSEY & WHITNEY LLP
111 S MAIN ST 21ST FL
SALT LAKE CITY, UT 84111-2176

/s/

_____

Lynsie Severnak